# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREGORY S. ROBERTS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **NANCY A. BERRYHILL, Acting** | : | |
| **Commissioner, Social Security** | : | |
| **Administration** | : | **NO. 16-5531** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                                 **April 25, 2018**

      This case demonstrates how a Social Security disability claimant, acting without the benefit of counsel, can easily be confused and unintentionally misled about his rights to pursue his remedies, implicating due process concerns. There is no question that the claimant did not seek judicial review of the Commissioner's decision resulting in the diminution of his benefits within the statutory sixty-day period. The issue is whether, under the circumstances of this case, the limitations period should be equitably tolled.

      Plaintiff Gregory S. Roberts, proceeding *pro se*, seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security reducing his benefits under the Social Security Disability Insurance Program.[1] The decision upheld previous determinations by the Social Security Administration (SSA) and an Administrative Law Judge (ALJ) that the SSA had overpaid Roberts $15,863.00. The SSA has been deducting offsets for both workers' compensation and retirement pension benefits from his disability insurance benefits (DIB) over a period of almost nine years.

---

[1] The program was established by Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 423-424 (disability).

Complaining that the SSA miscalculated the offsets, Roberts seeks to compel the Commissioner to properly calculate the overpayment and deduct only what he owes.

Moving to dismiss the complaint, the Commissioner contends that the action is time-barred by the limitations period set forth in § 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). It is undisputed that Roberts did not file the complaint within sixty days of the decision. However, considering the unusual circumstances in this case and in the interest of justice, he is entitled to equitable tolling. Therefore, we shall deny the Commissioner's motion.

**Facts and Procedural History**[2]

Sometime in 1998, Roberts suffered a work-related injury. On May 4, 1999, Roberts filed an application for DIB. The SSA determined that Roberts was disabled as of September 12, 1998 and awarded him DIB. In March, 1999, he began receiving weekly workers' compensation (WC) benefits of $477.50.[3]

---

[2] The facts, recounted from the complaint, are accepted as true. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 264, 268 (3d Cir. 2016) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). For purposes of Rule 12(b)(6), "a court 'must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Id.* at 268, 273 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Accordingly, the facts recited here include those contained in the SSA's records, which are attached to Defendant's Amended Declaration. *See* Def. Am. Decl., Exs. 1–10 (Doc. No. 21-1).

[3] Ex. 9 at 42; Ex. 2 at 10.

In October, 2000, Roberts reported to the SSA that he had been awarded WC benefits. Pursuant to 42 U.S.C. § 434(a)(1)(A), the SSA offset his DIB payments by the WC benefits, effective January, 2001.[4]

On September 30, 2002, the SSA informed Roberts that the agency had made a mistake in calculating the amount of the WC offset, resulting in an overpayment of DIB of $5,354.00.[5] Roberts requested reconsideration.[6] The agency took no action to recover the overpayment from Roberts, pending a decision on his request for reconsideration.[7]

Almost three years later, on June 6, 2005, the SSA informed Roberts that the initial computation of the WC offset was incorrect and "[h]is benefits will be corrected and his overpayment amount recalculated."[8] The agency further determined that his pension benefit credit reduced his WC payments to zero for the time frame from November 17, 2001, through October 21, 2002, which impacted the calculation of his DIB payments.[9]

---

[4] The Commissioner is required to offset, or reduce, the level of a recipient's DIB payments when the total of the recipient's disability payments and workers' compensation benefits exceeds eighty percent of the recipient's pre-disability earnings. 42 U.S.C. § 434(a)(1)(A).

[5] Ex. 1.

[6] *Id.*

[7] *Id.*

[8] Ex. 2 at 9, 12.

[9] *Id.* at 9–12. The agency's explanation and computation are not clear. The agency does not identify the statutes and regulations governing the pension offset that was applied to Roberts's case. Presumably, the agency concluded that Roberts's WC benefits and ultimately his DIB were subject to an offset or reduction based on the agency's determination that Roberts received payments under a state pension plan during the period from November 17, 2001, through October 21, 2002. *See Heckler v. Mathews*, 465 U.S. 728, 732-33 (1984) (reviewing the history of the pension offset provision of the Act); 20 C.F.R. § 404.408 (Apr. 4, 2016) (regulation governing reductions for certain federal, state, and local plans).

WC payments resumed effective October 22, 2002.[10] The end result was that although the SSA determined that Roberts was entitled to "his full disability benefit for November, 2001, on," it advised that "[h]is benefits will be corrected and his overpayment amount recalculated, and he will receive a separate notice regarding that action."[11]

On June 19, 2005, the SSA informed Roberts that he had been overpaid DIB by $15,863.00. It warned him that it would take action to recover the overpayment from him.[12] Specifically, the SSA stated: "We plan to recover the overpayment by withholding the payment you would normally receive [on or] about August 17, 2005. You will receive your monthly payment again [on or] about November 16, 2005."[13]

On December 8, 2006, after a hearing, an ALJ issued an unfavorable decision.[14] The ALJ found that Roberts was partially at fault in causing the overpayment and the SSA could not waive recovery of overpayment.[15]

Roberts requested review by the Appeals Council.[16] The Appeals Council granted review because "there [was] an error of law" in the ALJ's decision.[17] The

---

[10] Ex. 2. at 11.

[11] *Id.* at 12.

[12] Ex. 3 at 14.

[13] *Id.*

[14] The ALJ's decision is not in this record. The decision is discussed in Exhibit 5, the Appeals Council action reviewing the ALJ's decision.

[15] *See* Ex. 5 at p. 2 (discussing ALJ's findings).

[16] *Id.*

[17] *Id.*

Appeals Council vacated the ALJ's findings that Roberts was partially at fault in causing the overpayment and that the SSA could not waive recovery of the overpayment. Nonetheless, it concluded that the SSA's determination that Roberts had been overpaid by $15,863.00 was proper, accurate, and supported by the record.[18]

By letter dated September 22, 2009, the Appeals Council informed Roberts of its decision. The letter clearly informed him that he "had 60 days to file a civil action (ask for court review)."[19] The letter also stated:

> The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period. . . . If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to ask for court review. You must make the request in writing and give your reason(s) in the request.[20]

Roberts did not ignore the letter. He went to his local SSA office twice for advice, first on September 28, 2009, and again on October 16, 2009. Notes made by SSA representatives on those dates in the SSA's case management files reflect that Roberts was seeking relief from what he considered to be the SSA's miscalculation.[21] The notes show that Roberts visited an SSA service center on those dates to get answers to his questions about the WC offset calculations and the overpayment. He made those visits

---

[18] Ex. 6.

[19] Id.

[20] Id.

[21] Ex. 5 at 23–24.

within the sixty-day window for filing an appeal of the Appeals Council's decision of September 22, 2009, to the district court.

The September 28 note states, in part, that Roberts gave the SSA representative a copy of the Appeals Council's "review."[22] It also reports that "[w]e did discuss waiver since the AC dismissed the waiver denial."[23]

At the second meeting, as reflected in the notes, the SSA representative told Roberts that she disagreed with the Appeals Council about how to calculate the WC offset when pension benefits were involved. The representative also observed that the Appeals Council had ignored the evidence Roberts had submitted. The October 16, 2009 note states:

> Mr. Roberts is questioning AC [Appeals Council's] decision — I disagree with their decision regarding the computation of the op [overpayment] and I had prepared an ssa 795 . . . for his appeals council request. [U]nfortunately, AC did not give that evidence any weight. Nor did they give any weight to the rpoc [retirement pension offset credit] I completed with his AC request regarding how wc offset is computed. I told [M]r. [R]oberts we would check with region to see if the orig[inal] decision could be reopened and to verify my interpretation of the wc offset comp PPC with region — steve farrell — he agrees with my determination, but the regional attorney will not ask AC to look at this again — how to compute wc offset when there is a pension involved is a matter of "interpretation" and the AC can interpret the law as they wish. . . . I sent Mr. Roberts a letter today stating that ssa position is that of the appeal council. [H]e can file a suit in civil court or request a waiver if he cannot afford to repay.[24]

---

[22] Ex. 5 at 23.

[23] *Id.*

[24] *Id.* at 24.

The notes suggest that the agency's internal controversy about the proper treatment of pension offsets was communicated to Roberts. Importantly, the October note reflects that the SSA representative advised Roberts that she would attempt to have the decision reopened.

By letter dated March 8, 2010, the SSA informed Roberts that his case had been referred to the SSA's regional office for "technical advice on the computation" of the WC offset and the Appeals Council's decision.[25] It advised that "the decision of the Appeals Council remains and the amount of the overpayment is determined to be $15863.00."[26] It offered no explanation of how it determined that amount. The letter further stated that "[y]our next level of appeal is to file a civil action regarding the amount of the overpayment" or request a waiver of the overpayment. Significantly, it did not advise him of any deadline for filing an action.[27]

Roberts contends that he was not aware he had a time limit to file a civil action. In his undated letter to AUSA Lynch, Roberts stated, "[t]his Notice did not give a time limit to which I could appeal this matter in civil action."[28] One could reasonably assume that the

---

[25] Pl. Mot. for Hrg., Attach., Letter Mar. 8, 2010 (Doc. No. 17) at 3. In its motion to dismiss, the SSA did not submit a copy of the SSA's letter, dated March 8, 2010. Roberts did. On October 25, 2011, the SSA's paper file for Roberts's case was destroyed. Def. Am. Decl. ¶ 3(g). It is not clear what documents presently remain in the SSA's files. The SSA has not filed a transcript of the administrative record.

[26] Letter Mar. 8, 2010 at 3.

[27] *Id.*

[28] Pl. Mot. for Hrg., Attach., Letter to Andrew C. Lynch (Doc. No. 17) at 4–5.

March 8, 2010 notice superseded the September 22, 2009 notice of the Appeals Council's decision.[29]

On January 23, 2015, Roberts requested reopening the Appeals Council's decision and more time to file a civil action.[30] On April 10, 2015, before the Appeals Council ruled on that request, Roberts filed a written request to reconsider the decision and for more time to file a civil action.[31] He gave the following reasons for his request:

> I received workers compensation from 1999 through 2000 but those payments were subsequently taken back when I began my retirement benefits through my employer, Dept. of State/Youth Development Center. Effective 11/17/2001, I received no workers compensation. I disagree with the amount of the overpayment and it must be reviewed. See attached documentation.[32]

Both requests were made long after expiration of the statutory sixty-day period for filing an action. However, Roberts contends that the March 8, 2010 letter did not fix a period of time within which to seek judicial review.

On May 29, 2015, the SSA denied the request to reopen the Appeals Council's September 22, 2009 decision and the request for more time to file a civil action.[33] His request for reopening was denied because the Appeals Council found no new evidence, clerical error, or error as to the "evidence considered in making the determination or

---

[29] *Id.*

[30] Def. Am. Decl. ¶ 3(h).

[31] Ex. 9.

[32] *Id.* at 40.

[33] Ex. 8. The letter is undated. In a declaration, the SSA refers to the letter as issued on May 29, 2015. Def. Decl. ¶ 3(h).

8

decision."[34] The letter also advised Roberts that his request for more time to file a civil action was denied because he had "not stated any reason for not filing on time."[35] It advised Roberts that his request was "currently under consideration as a request for reconsideration as of April 10, 2015."[36] On February 26, 2016, the SSA sent Roberts another letter informing him that his "reconsideration request dated April 10, 2015 is . . . dismissed."[37]

On October 13, 2016, Roberts commenced this civil action. He requests an order directing the Commissioner to recalculate the overpayment and his benefits.[38] The Commissioner has moved to dismiss the action as untimely.

**Analysis**

A statute of limitations is an affirmative defense that must be pled in a responsive pleading. Fed. R. Civ. P. 8(c)(1); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Although it is not expressly permitted, a statute of limitations defense may be raised in a motion under Rule 12(b)(6) where the expiration of the limitations period appears upon the face of the complaint. *Wisniewski*, 857 F.3d at 157; *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *Raffinee v. Colvin*, 367 Fed. App'x, 379, 380 (3d Cir. 2010)

---

[34] Ex. 8.

[35] *Id.*

[36] *Id.*

[37] Ex. 10.

[38] Compl. (Doc. No. 5) at 5.

9

(affirming dismissal under Rule 12(b)(6) of Social Security complaint for judicial review as time-barred).

The statute of limitations applicable to an action for judicial review of any final decision of the Commissioner is sixty days. 42 U.S.C. § 405(g). There is no question that Roberts did not seek judicial review of the Commissioner's September 22, 2009 decision within the statutory sixty-day period. Nor did he file a civil action seeking review of the March 8, 2010 letter. On the face of the complaint, the sixty-day limitations period has run. But, that does not end the analysis. We now consider whether, under the circumstances of this case, equitable tolling extends the limitations period.

The statutory sixty-day period is not jurisdictional. *Bowen v. City of New York*, 476 U.S. 467, 478 & n.10 (1986) (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975)). It is a statute of limitations subject to equitable tolling. *Id.* at 480. However, equitable tolling is "to be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In *Bowen*, the Supreme Court held that "application of a 'traditional equitable tolling principle' to the 60-day requirement of § 405(g) is fully 'consistent with the overall congressional purpose' and is 'nowhere eschewed by Congress.'" 476 U.S. at 480 (quoting *Honda v. Clark*, 386 U.S. 484, 501 (1967)). The Court explained that Title II of the Act establishing the Social Security disability program is "a statute that Congress designed to be 'unusually protective' of claimants." *Id.* (citing *Heckler v. Day*, 467 U.S. 104, 106 (1984)). It observed that in authorizing the Commissioner to toll the sixty-day

limit, Congress "express[ed] its clear intention to allow tolling." *Id.* at 480 & n.12 (discussing pertinent regulations).

Although only the Commissioner has the discretionary authority to determine whether a claimant has shown good cause for an untimely filing under the requirements of 20 C.F.R. §§ 404.911 and 404.989, *Bacon v. Sullivan*, 969 F.2d 1517, 1521 (3d Cir. 1992), a district court has an independent obligation to determine whether "the equities in favor of tolling the limitations period are 'so great that deference to the agency's judgment is inappropriate.'" *Bowen*, 476 U.S. at 480 (quoting *Eldridge*, 424 U.S. at 330). Thus, we shall consider whether equitable tolling should be applied in this case.

Equitable tolling is applied where: (1) the defendant actively misled the plaintiff; (2) the plaintiff was prevented from asserting his rights in some extraordinary way; or (3) the plaintiff mistakenly asserted his rights in the wrong forum. *Kramer v. Comm'r of Social Sec.*, 461 F. App'x 167, 169 (3d Cir. 2012) (per curiam) (citing *Oshiver*, 38 F.3d at 1387); *Cardyn v. Comm'r of Social Sec.*, 66 F. App'x 394, 397 (3d Cir. 2003) (quoting *Oshiver* and declining to apply the equitable tolling doctrine to an untimely complaint under § 405(g)); *accord White v. Colvin*, 150 F. Supp. 3d 361, 363 (D. Del. 2015).

As we consider equitable tolling, we are mindful that procedural requirements governing access to the courts are not to be disregarded out of sympathy for a particular litigant. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *see also Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (approaching doctrine "warily so as to guard against possible misuse"); *Kramer*, 461 F. App'x at 169 (declining to apply the doctrine to an untimely appeal under § 405(g)). We are also

11

aware that Congress intended the Social Security disability program to be " 'unusually protective' of claimants." *Bowen*, 476 U.S. at 480 (quoting *Heckler*, 467 U.S. at 106).

Roberts alleges that he did not receive the September 22, 2009 notice.[39] The record suggests that he did receive the notice. When Roberts visited his local SSA office on September 28, 2009, he asked to speak with an SSA representative about a "notice" he had received and he gave the representative copies of the Appeals Council's "review."[40] During his second visit to his local SSA office on October 16, 2009, he "was questioning the AC decision."[41] At that time, as revealed by the SSA representative's notes, he was given the impression that the representative was taking steps to have his case reopened, lulling him into a sense that his claim was moving forward at the agency level.

Roberts was actively misled, albeit unintentionally. In an effort to assist him, the SSA representative advised him that she would request to have his case reopened. At the same time, the representative encouraged Roberts, explaining that she agreed that the offsets had been improperly computed. He had reason to believe the SSA was reconsidering his claim and there was no need to take further action at that time.

Whether Roberts received the September 22, 2009 notice is not necessarily dispositive. The SSA later reopened his claim. The analysis focuses on the March 8, 2010 letter, which states: "We have referred your case to our regional office for technical

---

[39] *See* Pl. Mot. for Hrg. (Doc. No. 17) at 2.

[40] Ex. 5 at 23.

[41] *Id.* at 24.

advice on the computation of your worker's compensation offset and the decision of the Appeals Council."[42]

Even though the Appeals Council reached the same decision, it triggered a new appeals process. It is from that decision, refusing to change the overpayment, that Roberts appeals. Thus, we must decide whether the March 8, 2010 letter properly advised him of his appeal rights.

Throughout years of persistent efforts to resolve the matter at the agency level, Roberts did not dispute that he was overpaid some amount. Instead, he disputed the SSA's methods, calculations and final figures. He objected that evidence he submitted had been incorrectly evaluated or entirely ignored. At least two SSA representatives shared his position.

In this civil action, Roberts again asks for a rational explanation of the SSA's determination of the overpayment. However, the SSA's recalculations of the contested DIB payments have never been adequately explained to him. Nor has it demonstrated to us how it calculated the amount.

The SSA still cannot demonstrate how it calculated the overpayment. At oral argument on the motion, we requested that the SSA submit a written explanation of how the overpayment was calculated. Instead of providing an explanation, the agency merely referred to its June 6, 2005 and June 19, 2005 letters.[43] The letters do not sufficiently explain how the agency calculated the WC and pension benefit offsets to

---

[42] Letter, Mar. 8, 2010 at 3.

[43] *See* Def. Suppl. Br. (Doc. No. 21) at 7.

13

determine the amount overpaid. Because these letters do not show how the amounts were calculated and merely state a conclusion, it is impossible to determine whether the calculation is correct. Roberts attached his calculation and summary of the agency's alleged errors to his complaint.[44]

In response to Roberts's oral request after the sixty-day period had expired, the SSA, in a letter dated March 8, 2010, acknowledged that his case was reopened and referred to the SSA's regional office for technical advice as to how his payments should be correctly calculated. The record does not contain any information as to what that advice might have been and what advice was communicated to him.

The March 8, 2010 notice gave Roberts two options. He could either file a civil action or request the Commissioner to waive any overpayment. What was missing from the notice was a time limit for exercising either option. Consequently, Roberts was not advised that he had to take formal action within the statutory sixty-day limitations period.

Although Roberts did not file a civil action or file a form requesting a waiver, he did visit the local SSA Office twice within three weeks of the September 22, 2009 decision. The advice he was given led him to believe that he could wait to file a civil action while he worked with the SSA representatives to resolve the issue. In short, he was led to believe that the SSA was still considering his challenge to the calculations of his benefits.

How the claim was handled and decided implicates due process concerns. An individual's interest in continued receipt of social security disability benefits is a statutorily created property interest that is protected by the Fifth Amendment. *Am. Mfrs. Mut. Inc.*

---

[44] Compl. at 4–5.

*Co. v. Sullivan*, 526 U.S. 40, 59–60 (1999) (citing *Eldridge*, 424 U.S. at 332). Thus, Roberts's interest in continued receipt of full disability benefits is protected by the due process clause.

In essence, Roberts alleges that he was denied due process because he was not given adequate and effective notice of the sixty-day requirement to request a waiver of overpayment or file a civil action. He adamantly claims that the March 8, 2010 letter did not place a time limit to request a waiver and file a civil action. On its face, the letter did not. Therefore, given the unusual circumstances of this case, we conclude that Roberts is entitled to equitable tolling.

**Conclusion**

Because the sixty-day time limitation to file a civil action is equitably tolled, this action may proceed. Therefore, we shall deny the Commissioner's motion to dismiss.